# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                              ) | Case No. CR-21-268-F |
| ) | |
| TYLER JAMES ROSS, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT TYLER JAMES ROSS'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Pursuant to Tit. 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220, 25 S.Ct. 738, 160 L. Ed. 621 (2005), Defendant Tyler James Ross, by and through his attorney of record, Dustin S. Phillips, submits this sentencing memorandum to assist the Court in understanding more about Mr. Ross's background and individual characteristics so that it may determine what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives of Tit. 18 U.S.C. § 3553(a).

## I. INTRODUCTION/GUIDELINE CALCULATION

Mr. Ross has no unaddressed objections to the Final Presentence Investigation Report [Doc. No. 15] (the "PSR") and agrees that the appropriate guideline range in this matter is 78-97 months. PSR, ¶103. Mr. Ross suggests that for the reasons discussed herein, a sentence of two (2) years' incarceration, with ten (10) years of supervised release (the "Requested Sentence") is sufficient but

not greater than necessary to achieve the purposes set out in Tit. 18 U.S.C. § 3553(a).

## II.    STATUTORY SENTENCING ISSUES: Tit. 18 U.S.C. § 3553(a)

### A.    The Nature and Circumstances of the Offense and History and Characteristics of Mr. Ross: Tit. 18 U.S.C. § 3553(a)(1).

#### 1.  History and Characteristics of Mr. Ross and the Offense

Tyler has always conducted himself in the right way outside his conduct in this case.  Despite having had serious health issues as a child that clearly set back his development, he has always worked as an adult.  *See* PSR, ¶¶95-99.  Tyler has also never been in trouble for anything in his life.  He is not simply someone that doesn't have any Criminal History points, he does not have a single contact with law enforcement in thirty-nine (39) years.  PSR, ¶¶50-56. Despite having had a sexual encounter with an older child at just the age of nine (9), he has never acted out inappropriately towards another person.  Not even an accusation.  In fact, throughout his life, anyone that knows Tyler will only say that he is a loving, reliable, helpful friend.  For example, he essentially dropped everything in his life to take care of his dying mother in the final months of her life.  All this would explain why, despite being fully aware of the charges to which he has pled guilty in this matter, he has the full support of his family, his longtime girlfriend, and even her family.[1]

---

[1] See Exhibits 1-7, attached, which are character letters written in support of Tyler that generally support the assertions in this section.

When law enforcement approached Tyler in this matter, he responded in accordance with his character. He admitted to possessing child pornography. He gave law enforcement access to all his electronic devices that could possibly have anything on it. Tyler was transparent and compliant. He pled guilty in this matter within a month of being indicted, quickly holding himself accountable for his actions. Since being on release, Tyler has acknowledged that he needs help and has started mental health treatment. He knows he is on a long road but that this is the beginning to getting himself better. Aside from one positive UA for marijuana, he has been fully compliant with his conditions of supervised release.

Moving forward, Tyler simply wants to get back to his girlfriend and family, continue to work, and continue to get mental health treatment so that he never goes back down the road that got him before the Court.

> B. **The Need for the Sentence Imposed to Provide Just Punishment, Adequate Deterrence, and Protect the Public: Tit. 18 U.S.C. § 3553(a)(2)(A)-(C).**
>
>> 1. **The Requested Sentence is a Just Punishment Under the Circumstances.**

The Requested Sentence serves as a just and significant punishment for Mr. Ross. Two years' incarceration would be the first criminal justice sentence he has ever faced in his life, and ten (10) years of supervised release would mean that U.S. Probation will be overseeing him until he is in his early fifties. Furthermore, he will be subject to the sex offender registry. All of this constitutes a strong punishment for his conduct in this matter. It is also noteworthy that there is no

allegation that Tyler sought to produce or distribute child pornography in this matter.

Although Tyler's possession may exceed some defendants with similar charges before the Court, he is deserving of a lighter punishment because of who he is and how he has conducted himself throughout his life. As discussed above, he has not only led a life free of crime, but as his character letters show, also a life full of giving to others. He clearly has never harbored thoughts or intentions of harming children, as there is not so much as an allegation or suspicion of misconduct in his past. Nor is there any digital evidence (i.e., conversations/planning with others) seized by law enforcement in this matter or otherwise that Tyler has any intent to harm children. Mr. Ross is also clearly remorseful for what he has done and is truly motivated to get treatment.

### 3. The Recommended Sentence Provides Sufficient Deterrence and Protects the Public.

#### a. Mr. Ross Does Not Pose a Threat to Minors

Mr. Ross poses no danger to children. His work and social life has placed him around children for nearly all his life. As stated above, he has never even been suspected of inappropriate contact or otherwise. There is no evidence that he has ever used the Internet for illegal purposes other than downloading child pornography. The pre-sentence testing in which Mr. Ross willingly participated backs up these assertions. *See* PSR, ¶¶76-78.

Tyler does not have the characteristics that studies have shown are indicative of someone who is likely to harm children. Michael Seto, a prominent expert in the field of pedophilia, engaged in a detailed examination of documented child pornographers in 2005. The goal of this examination was to determine what factors predict the likelihood that child pornography offenders would later commit a contact sexual offense. *See* Michael C. Seto and Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders,* Sexual Abuse: The Journal of Research and Treatment, Vol. 17 No. 2, April 2005, attached hereto as Exhibit 8. The study followed 201 child pornography offenders for a period of years after their release from prison and revealed that the greatest indicators of risk to re-offend or commit a contact sexual offense were **prior history of contact offenses** and **prior criminal history**. *Id.* at 207-08. In so concluding, the study noted that its finding *"*does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children." *Id.* at 208.

      b.    **Two Years' Incarceration Would Adequately Deter Mr. Ross**

Sentencing Mr. Ross to a guideline sentence would not deter him from committing crimes in the future any more than a two (2) year sentence would. Studies have found that increasing the severity of a crime's punishment does little to deter the crime itself, with the certainty of being caught being a far greater deterrent. Daniel Nagin, "Deterrence in the 21st Century", *Crime and Justice in*

*America*, pp. 1975-2025 (University of Chicago Press, 2013)*; See also* Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Justice:  A review of Research 28-29 (2006) (finding no evidence that lengthy prison sentences deter others); Ilyana Kuziemko & Steven D. Levitt, *An Empirical Analysis of Imprisoning Drug Offenders*, 88 J. of Pub. Econ. 2043 (2004) ("it is unlikely that the dramatic increase in drug imprisonment was cost-effective").

### c. Mr. Ross is Statistically Unlikely to Reoffend

Studies show that many of the characteristics of Mr. Ross's life make him statistically unlikely to reoffend.  Studies by the United States Sentencing Commission ("USSC") demonstrate that stable employment in the year prior to arrest is associated with a lower risk of recidivism. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 & Exhibit 10 (2004).  The USSC has also found that post-offense employment is also a key to reducing recidivism.  *See* USSC, *Symposium on Alternatives to Incarceration* (2008), at 22-24 (testimony of Chief Probation Officer Doug Burris, E.D. Mo.) (reporting that the district's revocation rate was lower than national rates due to district's employment program).  Having taken some college courses puts Mr. Ross in a category that is statistically less likely to reoffend than offenders having just a high school diploma or less. *Measuring Recidivism, supra*, at 12 & Exhibit 10.

As with Seto's sex offender study cited above, USSC studies show that minimal or no prior involvement with the criminal justice system is a powerful

predictor of a reduced likelihood of recidivism in general. USSC, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 15 (Jan. 2005). On the other hand, the USSC has found no correlation between offense level (the reason Tyler's guideline range is so high) and rate of recidivism, noting that "[t]he guidelines' offense level is not intended or designed to predict recidivism." *See Measuring Recidivism, supra*, at 15.

Tyler's age makes him statistically less likely to reoffend. According to USSC data, "[r]ecidivism rates decline relatively consistently as age increases," from 35% under age 21, to 9.5% over age 50. *Measuring Recidivism, supra,* at 12 and Exhibit 9. The U.S. Parole Commission has also included age in its calculus for recidivism risk. USSC, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 1, 8 & n. 29 (Jan. 2005).

### d. The Public Will be Protected While Mr. Ross is on Supervised Release and Sex Offender Registry.

Even under the Recommended Sentence Mr. Ross will be subjected to heightened supervision once he is released from custody. The Adam Walsh Child Protection and Safety Act of 2006 has expanded standard conditions of supervised release to include mandatory registration, broadened power to search sex offenders and greater mandatory punishments for a violation of the conditions of supervised release. *See* Tit. 18 U.S.C. § 3583(d)(3). These tools collectively allow the Court

to supervise offenders, deter future offenses, and safeguard the public more closely. Offenders that are determined to be "sexually dangerous" may also be committed under Tit. 18 U.S.C. § 4248. Therefore, treatment providers and case workers can then make assessments based on long periods of observation about which offenders should be referred for the strictest conditions on liberty. These mechanisms protect the public from dangerous offenders without overly punishing offenders that do not pose a danger to the public. Furthermore, the sex offender registry and the numerous proposed conditions to supervised release listed in the PSR [PSR, ¶¶110-121] provide the public even more protection.

### III.    Variance Based on Policy Disagreement with USSG §2G2.2

#### A.  Introduction/Background

The District Court is permitted to deviate from the calculated guideline range "based solely on policy considerations, including disagreements with the guidelines." *See Kimbrough v. United States,* 555 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The Supreme Court emphasized the Court's ability to do this in *Spears v. United States*, 555 U.S. 261, 129 S.Ct. 840, 172 L.Ed. 596 (2009) in noting that policy deviations from the guidelines need not be based on a defendant's particular circumstances; all that is needed to justify the variance is the sentencing court's disagreement with the guidelines. *See Id.* at 263-64.

#### B.    Disagreement with USSG §2G2.2 Based Upon United States Sentencing Commission's 2012 Report

In December 2012, the USSC issued a report to Congress to discuss issues with respect to the child pornography guidelines (the "Report"). *See U.S. Sent'g Comm'n Report to the Congress: Federal Child Pornography Offenses* (Dec. 2012). The USSC issued this report, in part, as a response to the large proportion of below-Guideline sentences on child pornography cases as well as "to consider whether the Guidelines are in need of revision in light of feedback from Judges as reflected in their sentencing decisions" and "as a result of recent changes in the computer and Internet technologies that typical nonproduction offenders use, the existing sentencing scheme in nonproduction cases no longer distinguishes among offenders based on their degrees of culpability." *Id.* at ii and 323.

### 1.  The Computer Use and Volume Enhancements are Cumulative.

The Report discusses at length why technological advances since the implementation of the child pornography guidelines overly punish nearly all possessors of child pornography. Specifically, enhancements for the use of computer and volume of images "now apply to most offenders" and the Guideline thus "fail[s] to differentiate among offenders in terms of their culpability." Report, *supra,* at iii, xi, 209, 323.

The USSC explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id*. at 6. The USSC

took issue to this reality because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," Id at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors." *Id*. at 323.  "[I]n addition to base levels of 18 or 22, [the aggravating conduct enhancements] results in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

## 2. The Guideline Enhancement for Images Depicting Prepubescent Children Punishes Nearly All Offenders.

The USSC stated in the Report that the typical child pornography case now involves images depicting "prepubescent children engaging in sexually explicit conduct." *Id. at* 84.  This fact, in and of itself does not make this enhancement cumulative or unjust, there are defendants to which applying this enhancement would be unfair.  The USSC noted in the Report that offenders "vary widely in their technological sophistication," with the relatively unsophisticated offenders using easily accessible peer-to-peer networks such as LimeWire to receive material "in an indiscriminate manner," while others "use their technological expertise to create private and secure trading 'communities' and to evade, and help others evade, detection by law enforcement." *Id* at viii, 61-62.

## 3. Child Pornography Guidelines' Inability to Distinguish Between Dangerous and Non-Dangerous Offenders

The USSC acknowledged in the Report that some offenders have "non-sexual motivations for viewing child pornography," such as "avoidance of stress or dissatisfaction with life." Report, *supra,* at 79. The Report also determined that "not all child pornography offenders are pedophiles or engage in other sex offending." *Id.* at 104. The USSC also noted in the report that there is no statistical correlation between a higher rate of "sexually dangerous behavior" and defendants to which the above-discussed enhancements applied. *Id.* at 204. As a result, the USSC concluded in the Report that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." *Id.* at 321.

### 4. Requested Changes in Legislation

The Report requests legislative changes to address the issues it found in the referenced Guidelines. Specifically, the USSC recommended that the specific offense characteristics related to the types and volumes of images, distribution and use of a computer "be updated to account more meaningfully the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g. the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)", and "to reflect offenders' use of modern

computer and Internet technologies." Report, *supra*, at *xvii-xix*, 322-33. The USSC also proposed amendments to modify the enhancement for pattern of activity for whether or not the offender was involved in child pornography "communities." *Id* at 323-24.

Defendants with characteristics like Mr. Ross are the reason the USSC has requested the above-referenced changes to the Guidelines. Mr. Ross does not possess the aggravating factors that make him a greater danger to the public than other offenders. Yet, he will receive just about every enhancement under the Guidelines due to the flawed and outdated parameters for the enhancements under USSG §2G2.2. In light of these flawed and outdated Guideline enhancements, Mr. Ross asks the Court to impose the Requested Sentence.

### 5. Unfair as Applied to Mr. Ross

Mr. Ross' Offense Level increased from 18 to 31 due to the enhancements found in USSG §2G2.2 that the USSC have found to be cumulative and inaccurate. Mr. Ross's Guideline range without these enhancers would have been 27-33 months (Adj. OL 18, CH I), less than one-third of his Guideline range calculated in the PSR. Even if one were to include just the "volume" enhancement, Mr. Ross's guideline range would have been 33-41 months (Adj. OL 20, CH I), less than half the guideline range calculated in the PSR.

### B. USSG §2G2.2 is Excessive When Compared to Violent Crimes

Mr. Ross's adjusted offense level of 28 in this case is the same as, or greater than, the base offense level for far more serious and violent crimes, such as:

- Assault with intent to commit murder, USSG § 2A2.1(a)(2): **Base Offense Level 27;**

- Bombing an airport or mass transit facility, USSG § 2K1.4(A)(1): **Base Offense Level 24**;

- Robbery with a dangerous weapon causing serious bodily injury, USSG § 2B3.1(a), (b): **Base Offense Level 20-31**;

- Inciting a prison riot with substantial risk of death, USSG § 2P1.3: **Base Offense Level 22**; and

When one compares Mr. Ross's Adjusted Offense Level to the base offense level of these more violent and dangerous crimes, the guideline cannot be considered appropriate under the circumstances.

## IV.  CONCLUSION

Mr. Ross accepts responsibility for his actions.  While he recognizes the seriousness of the offense and the need for punishment, we submit that a sentence of two (2) years' incarceration with ten (10) years of supervised release is appropriate under the circumstances.

    Respectfully submitted,

    /s/Dustin S. Phillips
    Dustin S. Phillips, OBA#21778
    Phillips, Coventon, Quillian, &
    Banner PLLC
    1900 Northwest Expressway, Suite 601

>Oklahoma City, Oklahoma 73118
>Telephone: (405) 418-8888
>Facsimile: (405) 260-9573
>Email:dustinsphillips@gmail.com
>*Counsel for Defendant Tyler James Ross*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to all ECF registrants that have entered their appearance in this matter, including:

Bow Bottomly, Esq., Asst. U.S. Attorney

>s/Dustin S. Phillips
>Dustin S. Phillips, OBA#XXXXX